UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN GROSSMAN,

    Plaintiff,

    v.

UNITED PARCEL SERVICE, INC.,

    Defendant.

Case No. 13-cv-2824 PJH

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Defendant's motion for summary judgment came on for hearing before this court on March 18, 2015. Plaintiff Steven Grossman ("plaintiff") appeared through his counsel, Stephen Jaffe. Defendant United Parcel Service, Inc. ("defendant" or "UPS") appeared through its counsel, Lara Hutner. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion as follows.

**BACKGROUND**

This is an employment case based on an alleged wrongful termination. Plaintiff Steven Grossman was employed by defendant UPS from 1978 until 2013. Plaintiff first worked as an administrative assistant, which involved loading and sorting packages, from 1978 until 1984. Plaintiff then worked as a supervisor and office manager, supervising 200 clerical employees, from 1984 until 1991. Plaintiff then worked in the Technology Support Group, working on software and hardware, between 1991 and 2001. Plaintiff then worked as an industrial engineer, working with engineering supervisors to implement new technology designed to improve package efficiency, from 2001 until 2013. In 2009, while in the industrial engineering position, plaintiff was promoted to a position managing

the entire West Coast region. See generally Complaint, ¶¶ 14-16.

In mid-February 2013, plaintiff was informed that he would be transferred to the position of Hayward Business Manager, an operational position that involves "the interpretation of and compliance with the Teamsters agreement of union drivers, managing on-road supervisors, part-time center supervisors, and ensuring compliance with the service and safety procedures for union drivers." Complaint, ¶¶ 17-19.

Plaintiff was concerned that he lacked experience in operational activities and would be unable to perform well in the position. Complaint, ¶ 21. Plaintiff was also concerned that the transfer was designed to force him to retire from UPS earlier than he had planned. Id. Plaintiff voiced these concerns to a human resources manager and two other managers upon learning of the transfer. See Complaint, ¶ 21; Dkt. 40 at 5-6.

At the time of the transfer, plaintiff was close to turning 55 years old. Plaintiff alleges that UPS has a pattern and practice of forcing employees to retire when they reach age 55, to prevent them from earning higher pensions that vest at age 65. Complaint, ¶¶ 13, 20.

Four days after the transfer, plaintiff requested retirement paperwork. After four weeks at the new position, plaintiff utilized eight weeks of vacation time, and then retired. Plaintiff's last day of work was March 6, 2013. Complaint, ¶ 21. By retiring at age 55, plaintiff received pension benefits equaling 58% of his salary. Id., ¶ 22. If he had retired at age 65, he would have received a higher percentage of his salary (though the complaint does not specify how much higher). Id.

On May 16, 2013, plaintiff filed suit against UPS, asserting three causes of action: (1) wrongful termination due to age in violation of California's Fair Employment and Housing Act ("FEHA"), (2) wrongful termination in violation of public policy (also based on age discrimination), and (3) breach of implied contract. The case was removed from state court on June 19, 2013. UPS now moves for summary judgment on all three causes of action.

## DISCUSSION

A.   Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). But allegedly disputed facts must be material – the existence

1   of only "some alleged factual dispute between the parties will not defeat an otherwise
2   properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.
3       When deciding a summary judgment motion, a court must view the evidence in the
4   light most favorable to the nonmoving party and draw all justifiable inferences in its favor.
5   Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).
6   B.   Legal Analysis
7       Plaintiff's first two causes of action are pled as wrongful termination claims; the
8   first under FEHA, and the second as in violation of public policy.  Thus, for those two
9   claims, it is not sufficient for plaintiff to show that he was subject to an adverse action, he
10  must show that his employment was terminated.
11      For each claim, plaintiff relies on the theory of constructive discharge, which
12  applies when "the employer's conduct effectively forces an employee to resign." Turner
13  v. Anheuser-Busch, 7 Cal.4th 1238, 1244 (1994).  In order to show constructive
14  discharge, a plaintiff must prove that the employer "either intentionally created or
15  knowingly permitted working conditions that were so intolerable or aggravated at the time
16  of the employee's resignation that a reasonable employer would realize that a reasonable
17  person in the employee's position would be compelled to resign." Id. at 1251.  The
18  "intolerable conditions" must be "sufficiently extraordinary and egregious to overcome the
19  normal motivation of a competent, diligent, and reasonable employee to remain on the
20  job to earn a livelihood and to serve his or her employer." Id. at 1246.  Importantly, the
21  test is an objective one, and the court's focus must be on "the working conditions
22  themselves, not on the plaintiff's subjective reaction to those conditions." Gibson v. Aro,
23  31 Cal.App.4th 1628, 1636 (1995) (emphasis in original).
24      The court finds that plaintiff's evidence does not meet this high standard.  In his
25  opposition brief, plaintiff improperly relies on subjective criteria to explain why he was
26  dissatisfied with his transfer – explaining that it was "his dream" to work in technology and
27  engineering, that he had an "emotional investment in his position, as it was one he
28  worked his entire career to achieve and maintain," and that "it was a position in which [he]

4

intended to remain until his retirement after the end of 2014." Dkt. 40 at 3, 11.

In a declaration filed along with his opposition brief, plaintiff offers the following:

> I never had a clear description of what my job would be as Hayward Business Center Manager, but I understood it would involve directing supervisors and operations management specialists, and managing union drivers and on-road supervisors in a package-center environment.  I also understood I was responsible for driver safety and understanding the accident reporting process.  I also understood I was responsible for interpreting and enforcing the labor contract, including the Driver Entitlement Process, and time and labor processes. . . . Although I had previously interacted with the Hayward Center solely for purposes of implementing new technology, I had neither adequate experience nor training in any of the tasks for which I understood I would be responsible to permit me to succeed.

Dkt. 40-6 at ¶¶ 6-7.

However, although plaintiff was concerned that "UPS had set him up to fail," there is no evidence that he actually did fail to meet expectations, or even that he was criticized for his performance.  Anyone starting a new position would be expected to face a learning curve, and the typical adjustment period that comes with any new job cannot constitute "intolerable conditions" that are "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer."  The fact that plaintiff requested retirement paperwork just four days after the transfer suggests that plaintiff made no meaningful effort to adjust to the new role, and instead made a voluntary choice to retire based on his "emotional investment" in his former position and his subjective preference to stay there until he retired.[1]  Dkt. 39-1, Ex. F at 3 (plaintiff's responses to requests for admission).  As one court, following Turner, has stated, "an employee is not permitted to quit and sue simply because he or she does not like a new

---

[1] Plaintiff emphasizes that he did not actually submit the retirement paperwork until four weeks later – but it is relevant that he requested the paperwork so soon after the transfer, especially when viewed in combination with the fact that he opposed the transfer from the beginning, and ultimately retired based on the same reason that he articulated to the human resources department before the transfer.

5

1  job assignment." Gibson, 31 Cal.App.4th at 1637.

2  Indeed, plaintiff's own deposition testimony further shows that the conditions of his new positon were not "intolerable."  Plaintiff admitted that his salary and pay grade were not decreased, that he was not forced to relocate for the new position (and in fact, that his new building was across the street from his former building), and that none of his co-workers were abusive.  See Dkt. 39-1, Ex. A at 286:7-287-7; Ex. F at 7.  Plaintiff further made clear that the only issue that he raised to human resources was his "ability to do the job."  Dkt. 39-1, Ex. A at 287:8-17.

Simply put, plaintiff has failed to raise a triable issue of fact as to whether his new working conditions were "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer."  Plaintiff's only evidence relates to his subjective reaction to the new position, and fails to address the issue of whether the working conditions themselves were so intolerable that a reasonable person would be "compelled to resign."  Accordingly, plaintiff has failed to raise a triable issue as to whether there was a constructive discharge, and thus, defendant's motion is GRANTED as to the first and second causes of action.

Plaintiff's third cause of action is for breach of implied contract.  California Labor Code section 2922 provides that "[a]n employment, having no specified term, may be terminated at the will of either party on notice to the other."  However, while the at-will presumption of section 2922 prevails where the employer and employee have reached no other understanding, it does not overcome employers' and employees' "fundamental ... freedom of contract" to depart from at-will employment.  Guz v. Bechtel, 24 Cal.4th 317, 336 (2000).  Thus, the employer and employee may enter "an agreement ... that ... the employment relationship will continue indefinitely, pending the occurrence of some event such as the employer's dissatisfaction with the employee's services or the existence of some 'cause' for termination."  Id.  The contractual understanding need not be express, but may be implied in fact, arising from the parties' conduct evidencing their

6

1  actual mutual intent to create such enforceable limitations.  Id.  However, "where there is
2  no express agreement, the issue is whether other evidence of the parties' conduct has a
3  'tendency in reason' to demonstrate the existence of an actual mutual understanding on
4  particular terms and conditions of employment."  Id. at 337.  The court must consider
5  such evidence and determine whether the "totality of the circumstances" gives rise to an
6  implied-in-fact contract limiting the employer's termination rights.  Id.

7         In the complaint, plaintiff alleges that the implied contract was evidenced by "oral
8  statements made by senior management to plaintiff over many years and by the contents
9  of the UPS Employee Manual, the UPS Code of Conduct, and other UPS documents
10 provided and available to plaintiff during his employment."  Complaint, ¶ 35.  However, in
11 his opposition brief, plaintiff does not cite to any specific statements or documents that
12 underlie this allegation, and instead makes the generalized assertion that "[o]ver the
13 thirty-five years of [his] employment, UPS gave no indication his position was at risk."
14 Dkt. 40 at 17.

15        The court finds that plaintiff has failed to raise a triable issue as to the existence of
16 an implied contract limiting UPS' termination rights.  Plaintiff fails to provide evidence of
17 any written policy regarding the term of his employment.  And plaintiff's argument that he
18 was given "no indication his position was at risk" over the course of 35 years is
19 insufficient to support an implied contract claim, as the California Supreme Court has
20 expressly held that "an employee's mere passage of time in the employer's service, even
21 where marked with tangible indicia that the employer approves the employee's work,
22 cannot alone form an implied-in-fact contract that the employee is no longer at will."  Guz,
23 24 Cal.4th at 341-42.

24        Moreover, the court notes that plaintiff affirmatively consented to a job transfer,
25 through his completion of a "career development discussion" form indicating that he
26 would be willing to accept a change in job functions or a lateral transfer.  See Dkt. 39-1,
27 Ex. C at 7.

28        For those reasons, the court GRANTS defendant's motion for summary judgment

as to plaintiff's third cause of action.

While the above reasons provide a sufficient basis to grant summary judgment on all three of plaintiff's claims, the court will address an alternative and independent basis for dismissal raised by UPS – that all three of plaintiff's claims are preempted by the Employee Retirement Income Security Act ("ERISA").

Section 510 of ERISA makes it unlawful for "any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." (emphasis added).  Section 514 of ERISA provides for preemption of state law claims that seek a remedy for violations of rights guaranteed by ERISA.

The Ninth Circuit addressed the scope of ERISA preemption in Tingley v. Pixley-Richards West, Inc., 953 F.2d 1124 (9th Cir. 1992), which includes a detailed analysis of previous Supreme Court and Ninth Circuit precedent.  The Tingley court held that ERISA's preemption clause "is to be read expansively," and that "a garden variety state law cause of action, not particularly troublesome in circumstances not involving employee benefits, may be preempted where it is used to remedy exactly the type of illegal activity proscribed by ERISA."  Id. at 1130-31.

In Tingley, the plaintiff had a job that provided health coverage, and three years into his employment, his wife gave birth to a child with spina bifida.  Plaintiff's insurance company received a $18,000 bill to cover delivery/post-natal costs, and the bill was then forwarded to plaintiff's employer.  Within two days, plaintiff was fired without explanation. Plaintiff filed suit against his former employer in state court, asserting four causes of action, and the defendant removed the case to federal court, on the basis of ERISA preemption.  The defendant also promptly filed a motion to dismiss based on preemption. The district court granted the motion with leave to amend, to allow plaintiff to assert an ERISA cause of action.  Plaintiff did indeed file an amended complaint, asserting ten

causes of action, but chose not to assert an ERISA claim. Defendant again moved to dismiss based on preemption, and the court granted the motion only in part. The court found that five of plaintiff's claims (including ones for breach of contract and discrimination) were not preempted by ERISA.

Defendant appealed, and the Ninth Circuit found that all claims were preempted. While certain claims "appear to concern [plaintiff's] employment relationship rather than his employee benefit plan, they spring from the handling and disposition of [his] medical benefits insurance claim and thus are subject to preemption." Id. at 1131. The court found that preemption "turns on the employee's theory of why the termination occurred," which may be discerned from the pleadings or may come out during discovery. Id.

In this case, UPS argues that the following exchange, at plaintiff's deposition, establishes that all of his claims arise out of UPS' intent to deny him retirement benefits:

Q: There are three different claims that you've brought. I just want to be clear that all of the claims that you brought are based on the fact pattern that unfolded in February and March of 2013, that you believe was UPS moving you into a position to force you to retire such that they would avoid having to pay you a higher pension. Is that accurate?

A: Yes.

Dkt. 39-1, Ex. A (plaintiff's deposition) at 158:1-9.

Based on that question and answer, UPS contends that all of plaintiff's claims concern his benefit plan, not his employment, and thus, are preempted by ERISA.

While UPS' position has merit, the court finds that portions of plaintiff's claims remain outside the scope of preemption. Importantly, while plaintiff's deposition response indicates that his claims are based solely on UPS' intent to deny him retirement benefits, his complaint also alleges discrimination on the basis of age. See Complaint, ¶¶ 26, 31. The Tingley court specifically identified an age discrimination claim as something that would not be preempted under ERISA. See Tingley at 1131 ("Had [plaintiff], in addition to the theory that he was fired because his employer did not want to pay his benefits, alleged that he was discriminated against on account of age . . . [his] age discrimination

theory would not relate to ERISA and would therefore not be preempted").

Similarly, in another case cited by UPS and described as involving a "nearly identical situation," a court in this district addressed an age discrimination claim that appeared to arise out of a denial of benefits. See Terramorse v. Yellow Freight, 1992 U.S. Dist. LEXIS 8546 (May 11, 1992). While the Terramorse court did find that plaintiff's claims were preempted by ERISA, it also found that the complaint "alleges sufficient facts to state an age discrimination claim," and that "such a claim, otherwise preempted by ERISA, may survive to the extent that it relies on a theory independent of the benefit plan." Id. at *10. Thus, the court found the claims "not preempted by ERISA to the extent that they relate to a claim for age discrimination." However, because the Terramorse court had before it a motion for summary judgment, it evaluated the non-preempted portion of the claim under the summary judgment standard, and found that plaintiff had failed to present any evidence of discrimination.

The court finds that the approach taken in Terramorse is similarly applicable to this case. To the extent that plaintiff alleges that UPS terminated him in order to deny him benefits, his claims are preempted under ERISA. To the extent that plaintiff claims that he was terminated due to age-based discrimination, or that he was terminated in breach of an implied contract, his claims fail to raise a triable issue, as described above.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED. To the extent that plaintiff seeks leave to amend his complaint to assert a violation of ERISA, the request is denied, as amending his complaint at the "eleventh hour," nearly two years after the case was filed, after discovery has closed and a summary judgment motion has been filed, would be highly prejudicial. See, e.g., Roberts v. Arizona Board of Regents, 661 F.2d 796, 798 (9th Cir. 1981).

**IT IS SO ORDERED.**

| | |
|---|---|
| 1 | Dated: May 21, 2015 |
| 2 | |
| 3 | PHYLLIS J. HAMILTON<br>United States District Judge |